[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 3, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-12387
Non-Argument Calendar

_____

D. C. Docket No. 07-01253-CV-ORL-31-GJK

CATHERINE F. VELARDO,
NELSON J. VELARDO,

Plaintiffs-Appellants,

versus

FREMONT INVESTMENT & LOAN,
AMERICAS SERVICING COMPANY,
EASTERN SEABOARD FINANCIAL,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(November 3, 2008)**

Before TJOFLAT, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

The claims in this case arose out of the refinancing of the mortgage on appellants' home. Appellants refinanced their mortgage by entering into a contract with Eastern Seaboard Financial ("ESF") on October 19, 2005, to obtain a loan from Fremont Investment & Loan ("Fremont"). The loan closed, and on February 1, 2006, Fremont assigned the loan to American Servicing Company ("ASC"). Prior to the assignment, appellants, on December 3, 2005, sent Fremont a notice to rescind the refinancing agreement because ESF and Fremont and violated the Florida Consumer Protection Act, the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607, the Home Owners Equity Protection Act ("HOEPA"), 15 U.S.C. § 1602, and the Florida Fair Lending Act. On February 6, 2006, appellants sent the same notice to rescind to ASC.

The refinanced mortgage went into default, and on July 18, 2006, ASC brought a foreclosure action against appellants in Florida circuit court. The circuit court entered judgment for ASC on February 8, 2007, and on August 6, 2007, appellants, proceeding pro se brought this lawsuit against Fremont, ASC, and ESF. In a eight-count complaint, they sought damages in Counts I and V under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, et seq., and in Count IV under RESPA. In Counts II and III, they sought rescission of the mortgage loan under

2

TILA. Counts VI, VII, and VII were brought under state law.

In an order entered on April 25, 2008, the district court granted appellees' motion for judgment on the pleadings. See Fed. R. Civ. P. 12(c). Record, Vol. 3 at Tab 79. The court dismissed Counts I, IV, and V, because they were barred by one-year statutes of limitations and the limitations periods were not subject to equitable tolling. The court dismissed the Count II and III TILA rescission claims pursuant to the Rooker-Feldman[1] doctrine, concluding that the claims were not independent of the claims involved in the circuit court foreclosure action. Finally, the court declined to exercise supplemental jurisdiction over the state law claims of Counts VI, VII, and VIII.

Appellants now appeal the court's judgment. They contend that although all of their TILA claims were untimely filed, the claims were subject to equitable tolling, because Fremont and ASC concealed the violations and they were diligent in seeking district court relief. They also contend that the district court erred in dismissing their TILA rescission claims under the Rooker-Feldman doctrine.

The TILA requires creditors to provide consumers with "clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights," including the right of rescission.

---

[1] Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923); D.C. Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983).

Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412, 118 S. Ct. 1408, 1410, 140 L. Ed. 2d 566 (1998). Further, the TILA provides that, when a loan made in a consumer credit transaction is secured by the consumer's principal dwelling, the consumer has the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or delivery of the material disclosure and rescission forms, whichever is later. 15 U.S.C. § 1635(a). If the creditor fails to deliver the forms, or fails to provide the required information, then the consumer's right of rescission extends for three years after the date of consummation of the transaction, or until the property is sold, whichever occurs first. 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3). Within 20 days after receipt of a notice of rescission, the creditor shall take any necessary action to reflect the termination of any security interest created by the transaction. 15 U.S.C. § 1635(b).

Pursuant to § 1640(e), all TILA claims must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). The violation "occurs" when the transaction is consummated. Nondisclosure is not a continuing violation for purposes of the statute of limitations. In re Smith (Smith v. American Fin. Sys., Inc.), 7373 F.2d 1549, 1552 (11th Cir. 1984). TILA's limitations period is subject to equitable tolling, however, in cases where the debtor has been prevented from bringing suit due to inequitable circumstances. Ellis v.

4

GMAC, 160 F.3d 703, 706 (11th Cir. 1998). In Ellis, we said that the statute was subject to equitable tolling because, otherwise, a consumer whose cause of action fraudulently was concealed from him until after a year had passed would be prevented from pursuing the cause of action, an "anomalous result." Id. at 708.

Because appellants filed their TILA claims for damages beyond the one-year limitations period, and they were on notice that the alleged mortgage fraud had occurred at the time they signed their loan documents or soon thereafter, their claims were untimely, and they did not meet the standard for equitable tolling.

Under the Rooker-Feldman abstention doctrine, "[i]t is well-settled that a federal district court lacks jurisdiction to review, reverse, or invalidate a final state court decision." Dale v. Moore, 121 F.3d 624, 626 (11th Cir. 1997). "[T]he authority to review final decisions from the highest court of the state is reserved to the Supreme Court of the United States." Id. (internal citations omitted). "The doctrine extends not only to constitutional claims presented or adjudicated by a state court, but also to claims that are 'inextricably intertwined' with a state court judgment. A federal claim is inextricably intertwined with a state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." Goodman ex rel. Goodman v. Sipos, 259 F.3d 1327, 1332 (11th Cir. 2001). In deciding this relationship, the court focuses on the federal

claim's relationship to the issues involved in the state court proceeding, instead of on the type of relief sought by the plaintiff. Id. at 1333 (holding that the Rooker-Feldman doctrine is broad enough to bar all federal claims that were, or should have been, central to the state court decision, even if those claims seek a form of relief that might not have been available from the state court).

In the scenario presented here, it is obvious that appellants' federal claims were inextricably intertwined with those litigated by the circuit court judgment.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.